## UNITED STATES v. SCHUPPER MOTOR LINES, Inc.

Criminal No. 1513.

District Court, D. New Jersey.
May 12, 1948.

738

Edgar H. Rossbach, U. S. Atty., and Martin D. Maroney, Asst. U. S. Atty., both of Newark, N. J., and James Y. Piper, of Washington, D. C., for the Government.

August W. Heckman, of Jersey City, N. J., for defendant.

MEANEY, District Judge.

In an information filed by the United States Attorney for the District of New Jersey on July 8, 1943, against the Zentz Motor Lines, the government charged the defendant, in 20 counts, with engaging in the transportation of property in interstate commerce, for compensation, as a common carrier by motor vehicle, without the requisite operating authority from the Interstate Commerce Commission. The period covered in the information was from November 2, 1942 to February 3, 1943. The operations were asserted to be in violation of section 206 (a) of the Interstate Commerce Act (hereinafter called the Act), 49 U.S.C.A. § 306(a). The case came on for trial before the Court, the defendant having specifically waived a trial by jury.

At the outset of the trial, the government filed a petition, and was granted leave to amend the information to show the name of the defendant as Schupper Motor Lines, Inc., the defendant having previously changed its name by proper corporate action. Additionally, count 20 was abandoned, a nolle pros. having been entered as to it during the course of a previous trial.

The information presently is in nineteen counts, each count charging violation of sec. 206(a) of the Act, 49 U.S.C.A. § 306(a). All the counts are similar with the exception of certain differences as to dates and points of origin and destination, consignors and consignees and the like. Originally each count was in four paragraphs. As a result of a prior trial, the last three paragraphs of each count are disregarded for the purposes of this trial. Accordingly, for the purposes of this opinion, paragraph one of count one may be taken as typical of the charges of the first paragraph of each of the remaining nineteen counts.

Paragraph one of Count 1 is in the following language:

"That on to wit, November 2, 1942, Zentz Motor Lines, Inc., a corporation, defendant, then and there being a common carrier by motor vehicle engaged in the transportation of property for the general public in interstate and foreign commerce by motor vehicle on public highways including those between the points hereinafter set forth, for compensation, unlawfully did knowingly and wilfully engage in an interstate operation on public highways, in that it did transport by motor vehicle on public highways from New York, New York, through and within the State and District of New Jersey and within the jurisdiction of this Court, to Fort Bragg, North Carolina, for Nathan Schweitzer Company, consignor, certain property, to wit, 184 barrels frozen chickens, consigned to Sales Officer, Quartermaster Corps, Field Commissary, for Compensation, to wit, $255.51, then and there without there being in force with respect to said defendant a certificate of public convenience and necessity issued by the Interstate Commerce Commission authorizing such inter-

state operations; contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States (Title 49, Section 306(a), U. S.Code)."

The section of the Act under which and for the violation of which, this information is brought, prohibits a common carrier by motor vehicle from engaging in interstate commerce unless there is in force with respect to such carrier a certificate of convenience and necessity authorizing such operation.

The pertinent provisions of section 206 (a), 49 U.S.C.A. § 306(a), provide as follows:

"(a) Necessity for; motor carriers in bona fide operation on June 1, 1935. Except as otherwise provided in this section and in section 310a, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations."

Thereafter follow certain provisos which are not here pertinent. Section 322(a) provides for penalties on violation of any of the provisions of the Act where none are otherwise provided for.

The terms and conditions of a certificate of public convenience and necessity issued to a common carrier by motor vehicle are set forth in section 208(a), 49 U.S.C.A. § 308(a) and insofar as they are pertinent provide:

"(a) Any certificate issued under section 306 or 307 shall specify the service to be rendered and the routes over which, the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, and in case of operations not over specified routes or between fixed termini, the territory within which, the motor carrier is authorized to operate; and there shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, including terms, conditions, and limitations as to the extension of the route or routes of the carrier, and such terms and conditions as are necessary to carry out, with respect to the operations of the carrier, the requirements established by the Commission under section 304(a) (1) and (6): Provided, however, that no terms, conditions, or limitations shall restrict the right of the carrier to add to his or its equipment and facilities over the routes, between the termini, or within the territory specified in the certificate, as the development of the business and the demands of the public shall require.

"(b) Deviation from route. A common carrier by motor vehicle operating under any such certificate may occasionally deviate from the route over which, and/or the fixed termini between which, it is authorized to operate under the certificate, under such general or special rules and regulations as the Commission may prescribe."

Pursuant to the terms and conditions of section 206(a), 49 U.S.C.A. § 306(a), the Interstate Commerce Commission (hereinafter called the Commission), issued a certificate of public convenience and necessity to the Zentz Motor Lines, Inc., the predecessor in name to the present defendant, Schupper Motor Lines, Inc., under date of March 25, 1942 (docket No. M. C. 14369). By the terms of its certificate, defendant was authorized (insofar as it pertains to this proceeding) to transport, as a common carrier, general commodities, with certain exceptions, over specified routes, between New York, New York and Alexandria, Virginia, with the right to serve certain off-route points, not material here. Authority was also given to serve all intermediate points; and off-route points in Maryland and Virginia within a five mile area of Washington, D. C. Additionally, defendant had granted to it, in May of 1942, a temporary operating authority, authorizing the transportation of dangerous explosives, until December 1944, over the routes and within the territory covered by the certificate previously granted.

A further application for a temporary authority under section 210a of the Act, 49 U. S.C.A. § 310a, to operate as a motor carrier

740

to Tampa and Pensacola, Fla., Mobile, Ala., and New Orleans, La., was denied in September of 1942.

The charge in each of the nineteen counts is that the defendant transported shipments, as set forth in each count, of general commodities, on commercial bills of lading from points in the New York City area to points of destination in Virginia, North Carolina and South Carolina by direct point to point operations without interchange of such freight with other common carriers at any point en-route.

The proofs offered amply support the charges. It is evident that under the certificate issued to defendant by the Interstate Commerce Commission, the only Virginia points which defendant was authorized to serve were Alexandria and other places in Virginia within a five mile radius of Washington, D. C.

The proofs demonstrated beyond reasonable doubt that defendant, during the period covered in the information, in fact transported general commodities to Norfolk, Portsmouth, Sewalls Point, Newport News and Cape Charles, all in Virginia and no one of which points is within the five mile radius of Washington, D. C. where defendant is authorized to operate. Additionally, deliveries were shown to Fort Bragg and Winston-Salem in North Carolina and Columbia, South Carolina. None of the above were established as authorized points of operation by defendant, under any authority of the Commission. Nothing was produced to prove any enlargement of defendant's operating authority beyond the scope of its certificate.

With such exceptions as will be noted, infra, the proofs as to each count were conclusive, and in no case was any evidence offered to refute the documents submitted by the government. As to each count, the evidence consisted of a bill of lading or shipping order showing thereon the point of origin of the shipment, the commodities carried, the consignor and consignee, and the destination point where delivery was to be made to the consignee. There was produced additionally, a written trip-lease or "truck-lease," signed on behalf of defendant as lessee and by or on behalf of the truck-

owner, lessor. There was in each instance a truck manifest issued by defendant, as well as freight bills bearing corresponding serial numbers to those on the bill of lading. There was also produced the freight bill delivery receipts, receipted by the consignee to Zentz. Finally, the government introduced cancelled checks covering transportation and other shipping charges, paid in some instances by the consignor, and in others by the consignee, but in every case, payment being to the defendant as the carrier.

These proofs, unrefuted, amply established the charge of unlawful carriage by defendant beyond its operating scope or authority.

The only exceptions to the proofs, as set out above, relate to count VIII where no signed delivery receipt was produced, and to count XII, where no separate cancelled shippers check was offered as proof of payment of transportation charges to defendant. The same situation existed as to counts XVIII and XIX. In each instance, however, the transportation charges were reflected in the payment by check received in relation to the movements shown in other counts, and was sufficient to prove the fact of the transportation by defendant.

Defendant has sought to defeat the charges and proof both by way of attack on the sufficiency of the information and by attempting to show certain affirmative defenses, which, if proven, would be sufficient to warrant a verdict of not guilty. While none of the numerous defenses raised are found to be exculpatory, the Court will address such attention to them as they seem to merit.

Defendant has attacked the validity of the information both on the ground that it fails to inform the defendant of the nature of the accusation against it in violation of its Constitutional rights, and on the ground that the failure to specifically negate the exceptions contained in section 206(a) of the Act is a fatal omission.

These defenses are without avail. They are precisely the same contentions as those set forth by the defendant in United States v. Apex Express, Inc., D. C., 76 F. Supp. 956. In that case, this court concluded that the section of the statute here in question, 49 U.S.C.A. § 306(a), fully defines

the offense and is entirely separable from the exceptions contained in it. Any exceptions must be set up by way of defense. Hence, the failure specifically to negate the exceptions contained in section 206(a) is not fatal to the sufficiency of the information.

Defendant's further defenses urge that the evidence adduced does not establish facts sufficient to constitute a crime against the United States, and particularly in time of war; that none of the movements were performed by a common carrier within the definition of the Act; that the transportation was not performed in vehicles owned and operated by the defendant; that the Act permits deviation from authorized routes, and finally, that the shipments were interlined with a connecting carrier.

These defenses will be considered briefly in the order set forth.

■ In support of its first asserted defense addressed to the evidence and law, defendant argues that the transportation here involved, was of commodities ultimately destined for use by the Army and Navy, either as material to be sent overseas or to be utilized in installation in this country. Clearly, then, says defendant, such transportation was performed by the carrier on behalf of the United States government. From this, defendant asks the court to conclude that, under section 217(b), 49 U.S.C.A. § 317(b), wherein section 22 of the Act, 49 U.S.C.A. § 22, is incorporated by reference, and under section 321(a) of the Transportation Act of 1940, 49 U.S.C.A. § 65(a), by inference, the government did not intend to be bound by any provisions of the Motor Carrier Act, Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq., where the carriage was for the United States or "on its behalf".

Analysis of the sections above referred to fails to lend support to the interpretation sought to be placed thereon by defendant. The exceptions and exemptions contained in the aforementioned sections in no manner lend sanction to the violations alleged. The sections are primarily concerned with rates and charges and do not touch on the scope of territorial operating authority in the carriage of commodities for the government or on its behalf.

The only excluding or exempting section is found in 49 U.S.C.A. § 303(b) wherein are enumerated "vehicles excepted from operation of law". Nothing therein contained can be construed, under the broadest construction, to include vehicles employed in transportation of property, for or on behalf of the government within the broad contentions made by defendant.

■ Pursuing the same defense, defendant argues also that, even if it be determined that the Act did affect transportation performed for the United States or on its behalf, such jurisdiction was modified during the desperate war emergency then existing, by various acts of Congress and more specifically by orders and directives of the Office of Defense Transportation designed to eliminate waste and generally to conserve operating equipment and expedite the movement of war material.

Specifically, defendant cites General Order O. D. T. No. 3 issued July 3, 1942. A full reading of the cited order fails to support defendant's contention, and seemingly refutes it. Section 501.11 of the original order provided in part:

"* * * no carrier shall be required to accept or receive shipments it is not authorized to transport, or at a point or points which the receiving carrier is not authorized to serve, or beyond his or its ability to transport."

That order was revised and amended by General Order O. D. T. No. 3 Revised, issued July 13, 1942, effective August 1, 1942. In the revised order, under Section 501.6, the following provision is contained:

"Section 501.6 Loading and Operating requirements.

"(c) The provisions of this subpart shall not be so construed or applied as to require any common carrier to perform any transportation service, the performance of which by it is not authorized or sanctioned by law or to render any such service beyond its transportation capacity."

Thus it is apparent that the directives of the O. D. T. not only did not presume to authorize operation by any carrier which such carrier was not authorized to render, but specifically stated to the contrary. The

court can find no force to this asserted defense.

■ Defendant next raises the contention that the transportation was not performed in vehicles owned and operated by defendant, but rather was performed by reason of certain trip-leases entered into by "owner-operators" and the defendant.

While it is true that in each of the violations proved, the movement was by truck leased by defendant, this fact, in the face of all the proofs, does not work out in defendant's favor.

■ Where the lease of vehicles to a carrier is under such terms and conditions as will make the operations conducted by such vehicles the operations of the lessee carrier, the lessee carrier will be liable for any breach of its operating authority. Compare United States v. Steffke, D. C., 36 F.Supp. 257.

In the instant proceeding the proofs amply demonstrate that the operation of the trucks on which these movements were made was under the control and direction of the defendant, with the drivers acting as agents only. The shipping orders in each case were those of the defendant, as were the freight bills, and payments of all freight charges were to the defendant. All truck manifests were issued by defendant and the written truck leases provided that during the period of the lease the vehicles rented were to be "solely and exclusively under the direction and control of the lessee". Liability may not be avoided in the face of these facts on the ground that these vehicles were not owned and operated by the defendant.

■ Defendant next defends on the ground that, if in fact there was a deviation from defendant's authorized routes, such deviation was permitted within the provisions of section 208(b) of Part II of the Act, 49 U.S.C.A. § 308(b) cited supra.

Under this section, defendant contends, occasional deviation is permitted, and further argues that no evidence was produced to show that such deviation was not "occasional" within the meaning of that provision.

Defendant, however, overlooks the concluding portion of the quoted section wherein it is provided that occasional deviation from authorized routes is permitted only "under such general or special rules and regulations as the Commission may prescribe". No such general or special rule, applicable to defendant has been shown, and without such showing, no deviation, whether occasional or otherwise, may be found to be authorized or permitted.

■ Defendant, similarly, seeks to defend on the provisions of section 203(b) of Part II of the Act, 49 U.S.C.A. § 303(b). That section, however, is applicable only to "any person not engaged in transportation by motor vehicle as a regular occupation or business". The court's conclusion that these operations were those of the defendant effectively precludes any defense based on the cited section.

■ Defendant's concluding argument is that the shipments were interlined with a connecting carrier between origin and destination. The proofs of such interlineation, however, are entirely lacking. Taken at best, the testimony elicited by defendant indicated that there might have been some arrangement for such interlining on particular occasions and for particular movements. Nothing, however, indicates that such interchange took place in the particular cases in this proceeding. Such notations as appear on several freight bills, indicating that an interchange might have taken place, were lined through, thus indicating, according to the testimony, that there was no transfer of shipment. No delivery receipt or other document indicates that any of the shipments were interlined. The testimony and evidence is completely lacking in anything of sufficient probative value to raise even a doubt as to a transhipment.

Accordingly, upon all the evidence adduced and proofs offered, the court is satisfied beyond a reasonable doubt that the defendant is guilty of unlawfully, knowingly and wilfully committing the offenses as charged in each count of the information.

The judgment of the court on each of the individual counts is that the defendant is guilty of knowingly and wilfully engaging in interstate operation without possessing a certificate of public convenience and necessity.