**U. S. A. C. TRANSPORT, Inc. v.
UNITED STATES.**

No. 4538.

United States Court of Appeals
Tenth Circuit.

April 21, 1953.

Writ of Certiorari Denied June 15, 1953.
See 73 S.Ct. 1139.

J. Ninian Beall, Washington, D. C. (Eugene A. Bond, Leadville, Colo., on the brief), for appellant.

George W. Howard, Sp. Asst. to U. S. Atty., Washington, D. C. (Charles S. Vigil, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, United States Circuit Judges.

HUXMAN, Circuit Judge.

U.S.A.C. Transport, Inc., was charged by information containing eleven counts with transporting as a common carrier by motor vehicle, for the United States Government certain equipment from Littleton, Colorado, to Benbrook, Texas, and from Littleton, Colorado, to Box Elder, South Dakota, without having in force a certificate of public convenience and necessity, in violation of 49 U.S.C.A. § 306(a). A jury found appellant guilty on all counts, and fines aggregating $550 were imposed on the several counts. It is from this judgment that this appeal is prosecuted.

U.S.A.C. Transport, Inc., is and was at the time involved in this case engaged in interstate commerce as a common carrier under a certificate of public convenience and necessity issued to U. S. Aeroplane Carriers, Inc., and assigned to it. The certificate did not, however, cover transportation between Littleton, Colorado, and Benbrook, Texas, and Littleton, Colorado, and Box Elder, South Dakota, the routes involved in this case.

Appellant's defenses were (1) that the information failed to state an offense because the transportation was for the Government and under its sovereign perogatives it is exempt from its own acts and is free to choose its agents and servants, and (2) that appellant did not transport the goods in question and had no connection therewith.

The defense that the required certificate is not necessary where a common carrier transports property for the United States Government is not well taken. Section 306 of the Act provides that it is a violation for a common carrier to engage in interstate commerce on the public highways without possessing a certificate of

public convenience and necessity from the Commission. A common carrier transporting goods for the United States Government for hire from one state to another is still a common carrier, engaged in interstate transportation, to the same extent as when thus transporting goods for a private individual. Of course, if the Government itself transports its own goods, it need not have the required certificate because it is not subject to the provisions of its own laws. That is the principle laid down in Dollar Savings Bank v. United States, 19 Wall. 227, 86 U.S. 227, 22 L.Ed. 80 and United States v. Knight, 14 Pet. 301, 39 U.S. 301 [Reprint 251], 10 L.Ed. 465, upon which appellant relies. But these decisions do not support the contention that a common carrier, carrying goods in interstate commerce, under contract with the Government, need not comply with the law with respect to the possession of the required certificate. The only case which seems to have passed upon the question is United States v. Schupper Motor Lines, D. C., 77 F.Supp. 737. It held squarely that a certificate of convenience and necessity was required by a common carrier carrying goods in interstate commerce for the Government. It is also worthy of note that Subsection (b) of Section 303, 49 U.S.C.A., which sets out specifically and in detail the vehicles exempted from the operation of the act, makes no reference to vehicles by common carriers while engaged in transporting goods for the Government.

■ We are also of the view that the evidence amply sustains the conclusion that the contract was between appellant and the Government. Thomas W. Murray was president of both U.S.A.C. Transport, Inc., and of U. S. Aeroplane Carriers, Inc., at the times involved in the transactions out of which this prosecution arose.[1] He was also engaged in the trucking business on his own account under the name of T. W. Murray Trucking Company. As such he held no certificate from the Interstate Commerce Commission. On April 12, 1949, Murray entered into a lease agreement with one W. H. Prince and Sons Trucking Company, under which Prince leased to Murray certain transportation equipment and agreed to furnish the drivers for the same. While this lease was limited to territorial transportation and did not include the Littleton, Colorado, transportations, there was a separate oral agreement that the equipment should also be used for the transportation involved in this prosecution. Prince testified that in the use of his equipment under this arrangement he was subject to Murray's orders. On August 1, 1949, Prince wrote Murray in care of U. S. Aeroplane Carriers, Inc., referring to the Littleton job and asked if he was licensed to operate in all the states under the Interstate Commerce Commission and also asking whether moving equipment for the Government "such as we have been doing for you" comes under the Interstate Commerce Commission. Under date of August 15, 1949, on a letter head titled U.S.A.C. Transport, Inc., Successor to U. S. Aeroplane Carriers, Inc., Murray answered referring to the Littleton contract and stated, "You ask if *we* [2] have I.C.C. rights covering the forty-eight states. We do * * *." This letter was signed "U.S.A.C. Transport, Inc., T. W. Murray, President."

All the bills of lading regarding the eleven transportations show U. S. Airplane Transport, Inc., as the original transporting company. With respect to the transportations set out in Counts one and two, U. S. Airplane Transport, Inc., was also the claimant. It also signed the payee's certificate by T. W. Murray as President. The voucher was made payable to it and was endorsed on the back U. S. Airplane Transport, Inc., and directly underneath U.S.A.C. Transport, Inc., Myra L. Gibbs, Secretary. With respect to the transportations set out in Counts three and four, the record shows that the shipments were received by appellant; that delivery was made by it; that appellant was the claimant and that the payee's certificate was signed U.S.A.C. Transport, Inc., per Thom-

---

1. Counsel for U.S.A.C. Transport, Inc., admitted these facts at the time of the trial.

2. Emphasis supplied.

as W. Murray, President. With respect to the transportations set out in Counts five and six, the record shows that the shipment was received at Littleton, Colorado, by U.S.A.C. Transport, Inc., by William Prince and Sons by Leland Wallberg. Claim for payment was made by U.S.A.C. Transport, Inc. The payee's certificate was signed by it per Thomas W. Murray, President, and the U. S. Treasurer check was likewise made payable to appellant and endorsed U.S.A.C. Transport, Inc., Thomas W. Murray, President. With respect to Count seven, the record shows appellant as the receiving carrier at the point of origin at Littleton; that it was the claimant for the transportation charges; that the payee's certificate was signed by appellant by Thomas W. Murray and the Treasurer check in payment of the claim was likewise made to appellant. The record with respect to the transportations in Counts eight, nine, ten and eleven shows delivery by U. S. Airplane Transport, Inc.; that the vouchers for transportation charges were made to U. S. Airplane Transport, Inc., and that the payee's certificate was signed U. S. Airplane Transport, Inc., per Thomas W. Murray, President.

It is clear from the record that Murray effected the arrangement with the Air Force for these transportations, and that he was acting for appellant. The facts outlined above support the view that appellant was the contracting party with the Government with respect to these transactions. While the bills of lading and some of the vouchers for the transportation charges were made to and endorsed by U. S. Airplane Transport, Inc., they were in all instances signed by Murray, either acting as President for appellant or for U. S. Airplane Transport, Inc. Murray testified there was no such company as U. S. Airplane Transport, Inc., and that the name was incorrectly used, possibly for "Aeroplane Carriers", the predecessor to U.S.A.C. Transport, Inc.

The only witness called by appellant was its President, Murray. His attempted explanation why all the correspondence and written instruments bearing on the transactions were had in the name of U.S.A.C. Transport, Inc., fails to convince. He admits that in response to the inquiry by Prince under date of August 1, asking whether he was licensed by the I.C.C., he answered as President of appellant corporation, stating, "We do" have a license. The natural inference is that *we* refers to the corporation. Prince's testimony that the invoices covering the transactions were sent to U.S.A.C. Transport, Inc., and that he was paid for the transportations by Roy Taylor, a Representative of Murray and U.S.A.C. Transport, Inc., points to appellant as the contracting party. Murray's oral explanation of these written instruments executed by him on behalf of appellant corporation fails to convince as it evidently failed with the jury. The record abundantly sustains the verdict and judgment based thereon.

■ Appellant's contention that it was prejudiced by the court's order permitting the Government to amend the information by adding the descriptive name U. S. Airplane Transport, Inc., is not well taken. It could not have been surprised by this. Murray's testimony shows that it knew all about this fictitious corporation. In his testimony he stated that the name was fictitious and that it was perhaps interchangeably used with Aeroplane Carriers. Murray was President of both U.S.A.C. Transport, Inc., and of U. S. Aeroplane Carriers, Inc., and unhesitatingly endorsed vouchers made to U. S. Airplane Transport, Inc., by himself as President. Furthermore, appellant did not move for time to prepare for the surprise it claims to have suffered by this move of the Government. We think there is no merit to the contention.

The judgment appealed from is affirmed.