**GOVERNMENT OF the VIRGIN ISLANDS,**

v.

**BEDFORD, Warren, Appellant.**

**No. 81–1172.**

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1981.

Decided Feb. 23, 1982.

Joseph B. W. Arellano (argued), Law Office of Roger L. Campbell, Charlotte Amalie, St. Thomas, V.I., for appellant.

Kathleen A. Felton, Atty., U.S. Dept. of Justice (argued), Washington, D.C., Ishmael A. Meyers, U.S. Atty., Hugh P. Mabe, III, Asst. U.S. Atty., D.V.I., Charlotte Amalie, St. Thomas, V.I., for appellee.

Before HUNTER, VAN DUSEN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Defendant Warren Bedford was convicted of attempted grand larceny, in violation of 14 V.I.C. § 1082 (Count One), attempted assault with a deadly weapon, in violation of 14 V.I.C. § 297(3) (Count Three), and unlawful possession of a firearm during the commission of a crime of violence, in violation of 14 V.I.C. § 2253(a) (Count Four).[1] He was sentenced to three and one-half years' imprisonment for attempted grand larceny, and two and one-half years' imprisonment on each of the other two counts. All sentences were to be served concurrently.

Defendant appeals on three grounds. First, he argues that the district court committed reversible error in allowing him to be impeached with evidence of a prior conviction without first determining that its probative value would outweigh its prejudicial effect. Second, defendant argues that the use of the term "dangerous weapon" instead of "firearm" in the verdict form, given to and signed by the jury, resulted in his conviction of a crime with which he was never charged. Third, defendant argues that the district court improperly allowed the information against him to be amended in violation of Fed.R.Crim. P. 7(e). We are not persuaded by defendant's arguments and will affirm the judgment of the district court.

## FACTS

Mr. and Mrs. Thomas Gurklis arrived in St. Thomas on September 14, 1980, on their honeymoon. After checking into the Pavilion and Pools Hotel at about 8:00 p. m., they went to the hotel bar for a drink. After having one drink each, they started back to their room with a bottle of wine, some soft drinks and snacks. As they entered a patio area adjacent to their room, a man wearing a nylon stocking mask and knit cap rushed towards Mrs. Gurklis and attempted to grab her purse. Mr. Gurklis testified that he saw the man run up to his wife and stick a gun in her back. Mr. Gurklis heard the man say he had a gun. Mrs. Gurklis held on to her purse, and her husband managed to push the assailant into the swimming pool.

Mrs. Gurklis then jumped into the pool after the assailant, trying to subdue him by stabbing him with her high-heeled shoes. The assailant swam to the edge of the pool, got out, and, holding a gun, threatened to kill Mr. Gurklis. A struggle ensued and as the two men wrestled, Mrs. Gurklis attempted to assist her husband. In the struggle, both Mr. and Mrs. Gurklis were struck by the assailant. Mr. Gurklis was struck in the face and hand and Mrs. Gurklis in the head. Finally, Mrs. Gurklis was able to get help from the hotel office. Two employees helped subdue the assailant until the police arrived and arrested him. The assailant was later identified as the defendant Warren Bedford.

Bedford testified in his own defense that he had been on the hotel grounds picking genips, and that he was suddenly attacked by an unknown man. He denied having made any attempt to steal Mrs. Gurklis' purse or to shoot Mr. Gurklis, and he denied knowledge of the gun or mask.

## DISCUSSION

### Evidence of Prior Conviction

Defendant claims that the district court committed reversible error by admitting evidence of his prior conviction for possession of a switchblade knife. He argues that the district court admitted this evidence with-

---

1. The court dismissed Count Two, assault with a deadly weapon, because the original informa- tion had alleged only a striking, with *no* mention of a deadly weapon.

out first determining that the probative value of the evidence outweighed its prejudicial effect, a determination required by Fed.R.Evid. 609(a)(1).[2]

■ During the cross-examination of the defendant, the prosecutor asked, "Are you the same Warren Bedford who was convicted on his guilty plea of possession of a switchblade knife in March of 1978?" Transcript at 163–64. Defense counsel immediately objected to the question on the ground that it was not probative of the defendant's credibility. The court overruled the objection stating: "If it is a felony, they may ask." Transcript at 164. Defense counsel again objected on the basis of relevance, pointing out that the probative value of the prior conviction must be weighed against its prejudicial effect under Rule 609(a)(1). The court again overruled the objection and permitted the question to be answered (in the affirmative). The Government concedes that the court did not make *any* attempt to weigh the probative value of admitting this evidence against its prejudicial effect to the defendant. Government's Brief at.8.[3]

■ Evidence of a prior conviction can be admitted under Rule 609(a)(1) solely for purposes of attacking credibility. Rule 609(a)(1) is absolutely clear and explicit in *requiring* the trial court, before admitting evidence of a prior conviction, to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant.[4] *See United States v.*

2. Rule 609(a) provides:
   For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, *and* the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involves dishonesty or false statement, regardless of the punishment.
   (Emphasis added.)

3. The determination need not necessarily be explicit. In some instances we have decided that the trial court implicitly made the requisite

*Provenzano,* 620 F.2d 985, 1003 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Cook,* 608 F.2d 1175, 1185 (9th Cir.) (en banc), *cert. denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1979); *United States v. Preston,* 608 F.2d 626, 639 (5th Cir. 1979); *United States v. Seamster,* 568 F.2d 188, 190–91 (10th Cir. 1978); *United States v. Hawley,* 554 F.2d 50, 52 (2d Cir. 1977); *United States v. Oakes,* 565 F.2d 170, 173 (1st Cir. 1977); *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The Government bears the burden of persuading the court that the evidence should be admitted, *i.e.,* that its probative value outweighs its prejudicial effect. *Oakes,* 565 F.2d 534; *Mahone,* 537 F.2d 922. The defendant is then permitted to rebut the Government's presentation, explicating the potentiality for unfair prejudice from admission of the evidence. *Mahone,* 537 F.2d at 929.

■ In this case, the district judge was apparently of the opinion that because the crime in question was a felony, it was *automatically* admissible under Rule 609(a)(1). This is incorrect. Rule 609(a)(1) is stated conjunctively: the crime must be punishable by death or imprisonment in excess of one year *and* there *must be* a determination by the district court that the probative value of the evidence outweighs its prejudicial effect.

balancing. *See United States v. Provenzano,* 620 F.2d 985, 1003 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980).

4. Important factors which courts have considered in making this determination include: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the defendant. *See generally* Symposium, "The Federal Rules of Evidence," 71 *Nw.L.Rev.* 634, 661–64 (1977).
   No balancing of probative value and prejudicial effect is required under Rule 609(a)(2) because crimes of "dishonesty or false statement" are thought to be inherently relevant to questions of credibility.

■ Although the district court clearly erred in holding that it need not make this advance determination, its error does not call for reversal of Bedford's conviction. We find that the court's erroneous evidentiary ruling was harmless error. " '[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials," *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570–71, 36 L.Ed.2d 208 (1973), *quoting Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). The reviewing court must decide "whether the error itself had substantial influence [on the minds of the jury.]" *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir. 1976), *quoting Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). *Accord, Government of the Virgin Islands v. Carino*, 631 F.2d 226, 230 (3d Cir. 1980). Unless "there is a reasonable possibility that [the error] contributed to the conviction, reversal is not required." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972).

On this record, there was overwhelming evidence of Bedford's guilt. Even if the district judge had made an advance determination pursuant to Rule 609(a)(1), and had incorrectly admitted the evidence anyway, there is no reasonable possibility that the evidence of his prior conviction could have had a "substantial influence" on the jury's decision. Both Mr. and Mrs. Gurklis testified about the circumstances of the assaults, their testimony was corroborated by two other witnesses, and all of the witnesses had helped to subdue Bedford and hold him until the police arrived. The district court's error was therefore harmless.

*Use of the Term "Dangerous Weapon" Instead of "Firearm" in the Verdict Form*

Count Four of the information against the defendant charged him with possession of an unlicensed firearm during the commission of a crime of violence, in violation of 14 V.I.C. § 2253(a).[5] Count Four charged as follows:

On or about the 14th day of September, 1980, in the Virgin Islands of the United States, Judicial Division of St. Thomas and St. John, WARREN BEDFORD, did unlawfully possess *a firearm*, to wit: a loaded .25 caliber automatic pistol during the commission of crimes of violence, to wit: Robbery and Assault, in violation of Title 14, Virgin Islands Code, Section 2253(a).

(Emphasis added.) Count Four remained unchanged throughout the trial. However, the verdict form signed by the jury with respect to Count Four read:

We, the Jury, impanelled and sworn to try the guilt or innocence of the defendant above named, find the defendant, Warren Bedford, GUILTY of the crime charged, to wit: Possession of a *Dangerous Weapon* during the commission of a crime of violence.

(Emphasis added.) Although the verdict forms were read in open court before being submitted to the jury, the defense did not object nor otherwise call the discrepancy to the court's attention. Transcript at 235. It is not clear exactly how this error came about. However, defendant argues that, regardless of the cause of the error, the verdict is fatally flawed and at variance with the charge because possession of a

5. Section 2253(a) provides:

(a) Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either openly or concealed on or about his person, or under his control in any vehicle of any description any firearm, as defined in Title 23, section 451(d) of this Code, loaded or unloaded, may be arrested without a warrant, and shall be fined not more than $1,000 or imprisoned not more than 2 years, or both, except that if such person shall have been convicted of a felony, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof, then such person shall be fined not more than $2,000 or imprisoned not more than 5 years, or both. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

dangerous weapon is a separate and distinct statutory offense under Virgin Islands law, *i.e.*, 14 V.I.C. § 2251(a).[6] Thus, defendant reasons that he was never charged with the offense he was convicted of and could not prepare his defense accordingly.

■ We disagree. Even if we were to rule that we could reach this issue on appeal, despite the failure to object, the error in the verdict form was merely clerical. The actual charging language of Count Four correctly stated that the defendant had possessed "a firearm, to wit: a loaded .25 caliber automatic pistol." Appendix at 29. Defendant was thus fully aware of the nature of the charge against which he had to defend himself. Furthermore, throughout the entire trial, everything that the jury heard regarding Count Four was consistent with the fact that the charge was that of possession of a firearm. In its preliminary instructions, the court explained Count Four as "the unlawful possession of a firearm." Transcript at 9. Furthermore, the government's evidence, through the testimony of both Mr. and Mrs. Gurklis, clearly focused on Bedford's possession of a handgun during the assault. Transcript at 30, 54–56, 58. Other witnesses testified about the recovery and identification of the gun as a ".25 Colt automatic." Transcript at 78–79, 88, 96. There was testimony that the *"gun"* was fully loaded and capable of firing at the time the crimes were committed. Transcript at 97–98, 106–07. Additionally, there was testimony that the defendant did not have a license to carry the firearm. Transcript at 106.

Furthermore, the record indicates that at the close of the prosecution's case, when the court explained to the jury that there were to be certain changes in the original charges, it explicitly noted that Count Four would remain as it was. Transcript at 144. In the final jury instructions, the court twice repeated that Count Four charged the defendant with possessing an unlicensed firearm in commission of a crime of violence. Transcript at 215, 230.[7] Thus, it was apparent from the information, the Government's evidence at trial, and the court's

6. Section 2251(a) provides:

(a) Whoever—

(1) has, possesses, bears, transports, carries or has under his proximate control any instrument or weapon of the kind commonly known as a blackjack, billy, sandclub, metal knuckles, bludgeon, switchblade knife or gravity knife; or

(2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stilleto, or any other dangerous or deadly weapon shall—

(A) be fined not more than $1,000 or imprisoned not more than two (2) years, or both; or

(B) if he has previously been convicted of a felony, or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence (as defined in section 2253(d)(1) hereof) shall be fined not more than $2,000 or imprisoned not more than five (5) years, or both, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

7. The charge stated in part:

... In this charge, count four, the Government has to prove, one, *that the defendant possessed the firearm; that at the time he* possessed this .25 caliber automatic *that they exhibited here, if you find that he possessed it beyond a reasonable doubt, you must next find beyond a reasonable doubt *that he didn't have a license from the Commissioner of Public Safety to carry it.* Three, you must find *that it is a firearm that meets the definition of* Section 451(d), that is to say, that it was a device, a weapon, which was capable of discharging ammunition by means of gas generated from an explosive composition and that will include air gas or a spring gun. *So to repeat again, one, that he possessed this firearm*; two, that he was not licensed to possess it; *three, that it meets the definition I have just given you of a firearm,* and four, that he possessed it in the attempted commission of a crime of violence. ...

And, in explaining why there was no lesser included offense to consider on Count Four, the court once again repeated the essence of that offense:

... With count four, either you find that he unlawfully possessed an unlicensed weapon *which meets the definition of firearm* and that he had it in his possession while committing a crime of violence, namely, assault, third degree; either he did have it or he didn't. ...

(Emphasis added.)

instruction that Count Four involved possession of a firearm.

It is clear to us that what occurred was a clerical mistake, which could have been corrected at any time by the district court under Fed.R.Crim.P. 36.[8] We hold that the error, on this record, is harmless.

### The Amending of Count Three

Count Three of the information initially charged the defendant as follows:

> On or about the 14th day of September, 1980, in the Virgin Islands of the United States, Judicial Division of St. Thomas and St. John, WARREN BEDFORD, did with intent to commit robbery assault another, to wit, Thomas Gurklis, by pointing a handgun at him and threatening to shoot and kill him and striking his face and finger in violation of Title 14, Virgin Islands Code, Section 295(3).

Because of a lack of evidence that the defendant intended to rob Mr. Gurklis, defendant's motion for judgment of acquittal on Count Three was partially granted. However, the court permitted the Government to amend Count Three at the close of the Government's case to allege an assault in the third degree under 14 V.I.C. § 297(2),[9] specifically, with a deadly weapon, on the ground that it was a lesser included offense of § 295(3), assault with intent to commit robbery.[10] Transcript at 128, 140–41.

The court based its decision on the fact that the particular charging language used in Count Three alleged that the defendant "did with intent to commit robbery assault another, *to wit: Thomas Gurklis, by pointing a handgun at him and threatening to shoot and kill him.*" Appendix at 29 (emphasis added). The court reasoned that an amendment making the charge one of assault with a deadly weapon would be permissible as no "new" charge would be introduced because the particular language of Count Three explicitly stated that the defendant used a handgun. Transcript at 140. In the circumstances of this case, it ruled that assault with a deadly weapon *was* a lesser included offense of assault with intent to rob. Transcript at 141. The defendant argues that the district court was wrong as a matter of law in ruling that assault with a deadly weapon could ever be a lesser included offense of assault with intent to rob and that therefore the amendment did charge an "additional or different offense," in violation of Fed.R.Crim.P. 7(e).

Rule 7(e) provides:

> The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

These requirements are cumulative. *See, e.g., United States v. Personal Finance*

---

**8.** Fed.R.Crim.P. 36 provides:

> Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

**9.** § 297, "Assault in the third degree," provides:

> Whoever, under circumstances not amounting to an assault in the first or second degree—
> (1) assaults another person with intent to commit a felony;
> (2) assaults another with a deadly weapon;
> (3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;
> (4) assaults another and inflicts serious bodily injury upon the person assaulted; or whoever under any circumstances;

> (5) assaults a peace officer in the lawful discharge of the duties of his office with a weapon of any kind, if it was known or declared to the defendant that the person assaulted was a peace officer discharging an official duty—shall be fined not more than $500 or imprisoned not more than 5 years or both.

**10.** § 295, "Assault in the first degree," provides:

> Whoever— .
> (1) with intent to commit murder, assaults another;
> (2) with intent to kill, administers or causes to be administered to another, any poison or other noxious or destructive substance or liquid, and death does not result; or
> (3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another—shall be imprisoned not more than 15 years.

*Company of New York*, 13 F.R.D. 306, 311 (S.D.N.Y. 1952); 8 Moore's Federal Practice ¶ 7.05[2], at 7–26 (1979).[11]

■ An information may appropriately be amended to charge a lesser included offense of the offense initially charged, provided substantial rights of the defendant are not prejudiced. Because a lesser included offense is, by definition, composed exclusively of some, but not all, of the elements of the offense charged, it would never constitute a "different" offense, and seldom an "additional" offense within the meaning of Rule 7(e).

■ However, we find that the district court was incorrect in holding that assault with a deadly weapon is a lesser included offense of assault with intent to rob. We adhere to the traditionally accepted test, derived from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining whether a particular crime is a lesser included offense of another crime. A lesser included offense is one that does not require proof of *any* additional element beyond those required by the greater offense. *See also Brown v. Ohio*, 432 U.S. 161, 164–69, 97 S.Ct. 2221, 2224–27, 53 L.Ed.2d 187 (1977). The elements of the offense are compared *in the abstract*, without looking to the facts of the particular case. *United States v. Lampley*, 573 F.2d 783, 789–90 (3d Cir. 1977); *Government of the Virgin Islands v. Smith*, 558 F.2d 691, 695–96 (3d Cir. 1977). Examining the statutes in question, it is clear that assault with intent to rob does not require proof of a deadly weapon. Thus, assault with a deadly weapon is not a lesser included offense of assault with intent to rob.

■ However, we agree with the government that this conclusion does not determine the outcome of this case. The question of whether a crime is an "additional or different" offense for purposes of amending an information pursuant to Rule 7(e) is not coextensive with the question of whether a crime is a lesser included offense of another. Although the amending of an information to include a lesser included offense will rarely violate the first requirement of Rule 7(e) (that no additional or different offense be charged), it is not necessarily true that the amending of an information to include a crime which is *not* a lesser included offense *will* violate the rule.

■ Obviously, if the Government had added a completely new or different offense of which the defendant had no notice, Rule 7(e) would be violated. *See, e.g., United States v. Personal Finance Co. of New York*, 13 F.R.D. 306, 310–11 (S.D.N.Y. 1952).[12] However, the case before us does not present such a problem. Because of the detailed and particular language used in Count Three, it not only contained all the elements necessary to charge assault with intent to rob, but also all the elements of assault with a deadly weapon. If the government had proved all it had alleged, the crime shown would have constituted both an assault with intent to rob *and* assault with a deadly weapon.

Furthermore, it is significant that the defendant could not claim surprise. Defendant had adequate notice of the charge

---

**11.** The difference between amending an information and amending an indictment was explained long ago by Lord Mansfield:

> There is a great difference between amending indictments and amending informations. Indictments are found upon the oath of a jury, and ought only to be amended by themselves; but informations are as declarations in the king's suit. An officer of the crown has the right of framing them originally, and may, with some, amend in like manner as any plaintiff may do.

*Rex v. Wilkes*, 4 Burr. 2527 (1770). *See also Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

**12.** The case law interpreting Rule 7(e) has generally addressed the question of whether the defendant has been prejudiced by the emendation, rather than the conceptual problem of what constitutes "an additional or different" offense. *See, e.g., United States v. Blanchard*, 495 F.2d 1329, 1332 (1st Cir. 1974); *U.S.A.C. Transport v. United States*, 203 F.2d 878, 888 (10th Cir.), *cert. denied*, 345 U.S. 997, 73 S.Ct. 1139, 97 L.Ed. 1403, *rehearing denied*, 346 U.S. 842, 74 S.Ct. 16, 98 L.Ed. 362 (1953); *Fredrick v. United States*, 163 F.2d 536 (9th Cir.), *cert. denied*, 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360 (1947).

that was submitted to the jury. Indeed, it is not clear how defendant would have changed his defense in any way, as it consisted of a *complete denial* of *all* the allegations against him. We therefore find that on these facts, no "additional or different" offense was charged in the amended Count Three, and substantial rights of the defendant were not prejudiced as a result of the emendation of the information.

## CONCLUSION

For the foregoing reasons, we will affirm the judgment of the district court.