UNITED STATES, Appellee

v.

Garland T. SULLIVAN, III, Chief
Warrant Officer Three, U.S.
Army, Appellant.

No. 94–0414.
CMR No. 9200223.

U.S. Court of Appeals for
the Armed Forces.

Argued April 3, 1995.

Decided Sept. 13, 1995.

For Appellant: *John A. Wickham* (argued); *Major Robin L. Hall, Captain Thomas D. Wight, Captain Stanley M. Bell* (on brief); *Major Roy H. Hewitt.*

For Appellee: *Captain John G. Giovannelli* (argued); *Colonel John M. Smith, Major Lyle D. Jentzer, Captain Michael E. Mulligan* (on brief); *Major Kenneth T. Grant.*

*Opinion of the Court*

GIERKE, Judge:

1. A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of sodomy, conduct unbecoming an officer (2 specifications), and service-discrediting conduct (4 specifications), in violation of Articles 125, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 925, 933, and 934, respectively. The approved sentence provides for a dismissal and forfeiture of $500.00 pay per month for 4 months. The

Court of Military Review[1] affirmed the findings and the approved sentence. 38 MJ 746.

2. We granted review of the following issues:

## I

WHETHER THE MILITARY JUDGE'S DENIAL OF DEFENSE COUNSEL'S MOTION TO SUPPRESS THE CASSETTE RECORDINGS OF APPELLANT'S CORDLESS TELEPHONE CONVERSATIONS AND THE FRUITS OF THAT EVIDENCE WAS ERROR AS IT VIOLATED THE FOURTH AMENDMENT.

## II

WHETHER THE MILITARY JUDGE'S AMENDMENT TO CHARGE I OVER DEFENSE'S OBJECTION WAS ERROR AND PREJUDICED A SUBSTANTIAL RIGHT OF THE ACCUSED.

We resolve both issues against appellant.

### Factual Background

3. The facts are set out in detail in the opinion of the court below. 38 MJ at 748–49. The following is a summary of the facts necessary to our decision.

4. Appellant telephonically contacted numerous women and asked them questions about their sexual practices. His questions included asking about their frequency of sexual activity, whether they had engaged in sexual activity with multiple participants, whether they engaged in oral sex or masturbation, and whether they were willing to engage in "phone sex." Appellant's telephone survey was the basis of the specifications of Charge I (violating Alabama law by wrongfully conducting a telephone sex survey for the purpose of sexual gratification and/or sexual activity) and the specification of Additional Charge I (conduct unbecoming an officer by wrongfully conducting a telephone sex survey for an illicit purpose).

5. After receiving encouraging responses to all his questions from Ms. B, appellant met her at a local fast-food restaurant. He and Ms. B then went to her apartment where they engaged in fellatio and sexual intercourse, giving rise to the specification of Charge II (sodomy) and the specification of Additional Charge II (discreditable conduct by committing adultery).[2]

6. Appellant used a cordless telephone to conduct his sex survey. A fellow warrant officer, Chief Warrant Officer Three (CW3) Lang, lived near appellant. His hobby was to monitor radio transmissions, particularly aviation traffic. CW3 Lang accidentally intercepted one of appellant's telephonic sex surveys. He then "preset his scanner to lock on the frequency used by appellant's cordless" telephone, "attached a recording device to his scanner," and "recorded over 6 hours of [appellant's] conversations."

7. CW3 Lang turned his recordings over to the Criminal Investigation Command (CID), because he believed that "a crime was being committed." Based on the recordings, "appellant and two ... women ... he called were identified."

8. Appellant moved to suppress the tape-recorded conversations. After an evidentiary hearing, the military judge denied the motion and made extensive findings of fact. His findings of fact included a finding that "CW3 Lang was not a law enforcement official and was not under color of law an enforcement official at any time that he made recordings of telephone conversations." Appellate Exhibit (App.Ex.) XVIII.

9. After arraignment but before trial on the merits, the military judge permitted the prosecution to amend the specifications of Charge I, over defense objection. (App. Exs. VIII and XX). The defense did not request additional time to prepare or adjust trial tactics as a result of the amendment.

10. The specifications were changed from alleging an assimilation of Alabama law under clause 3 of Article 134 to allegations of

---

1. See 41 MJ 213, 229 n.* (1994).

2. General Court–Martial Order No. 5 dated 24 April 1992 erroneously states that Additional Charge II was a violation of Article 133. The Charge Sheet and the Recommendation say it violated Article 134.

conduct prejudicial to good order and discipline or of a nature to bring discredit on the armed forces, under clauses 1 and 2 of Article 134. Before amendment, each specification alleged that appellant did—

> violate Title 13A, Code of Alabama, Section 11–8, assimilated into Federal Law by 18 U.S.Code Section 13, by wrongfully telephoning [the victim], with no purpose of legitimate communication, to wit: falsely identifying yourself as "Jim Williams," and attempting to conduct a survey of her sexual practices, allegedly for East Coast Publishing Company, a nonexistent organization.

After amendment, each specification alleged that appellant did,

> wrongfully telephone [the victim] to wit: falsely identifying himself as "Jim Williams," and attempting to conduct a survey of her sexual practices, such conduct being to the prejudice of good order and discipline of the armed Forces and of a nature to bring discredit to the Armed Forces.

11. The military judge granted a motion for a finding of not guilty as to the allegation that appellant's conduct was "to the prejudice of good order and discipline." He found appellant guilty of service-discrediting conduct, after adding "for the purposes of determining the said [victim]'s prospects for her being a partner in mutual masturbation while talking to her over the phone and/or engaging in sexual activity outside of marriage" to each of these specifications.

### Issue I: Interception of Cordless Telephone Conversations

12. Appellant's argument is two-pronged: (1) the military judge and the court below erred in finding that appellant had no reasonable expectation of privacy in his cordless telephone calls (Final Brief at 18); and (2) Chief Lang's recordings of appellant's conversations were inadmissible because Chief Lang, "a 'person subject to the code,'" was not acting in a private capacity and failed to warn appellant of his rights against self-incrimination under Article 31, UCMJ, 10 USC § 831. Final Brief at 21. The Govern-

ment argues that Chief Lang was "neither questioning appellant nor acting in an official capacity on behalf of law enforcement; therefore, there was no governmental intrusion." Answer to Final Brief at 7.

13. We review a military judge's ruling admitting or excluding evidence for an abuse of discretion. *See, e.g., United States v. Johnston,* 41 MJ 13, 16 (CMA 1994) (admissibility of scientific evidence); *United States v. Gray,* 40 MJ 77, 80 (CMA 1994) (admissibility of witness' bias); *United States v. Mukes,* 18 MJ 358, 359 (CMA 1984) (admissibility of uncharged misconduct). *See generally* S. Childress & M. Davis, 2 *Federal Standards of Review* [hereafter Childress & Davis] § 11.02 (2d ed.1992) (ruling on admission of evidence reviewed for abuse of discretion). In reviewing a military judge's ruling involving a mixed question of fact and law, as this one is, we review factfinding under the clearly erroneous standard and conclusions of law under the *de novo* standard. *United States v. Cardenas,* 9 F.3d 1139, 1147 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994); *United States v. Mejia,* 953 F.2d 461, 464–65 (9th Cir.1991), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992). We will reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law. *See* Childress & Davis, *supra,* § 11.10 at 11–41.

14. Telephone conversations are protected by the Fourth Amendment if there is a reasonable expectation of privacy. *United States v. Sturdivant,* 13 MJ 323, 326 (CMA 1982), *citing Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Mil.R.Evid. "311–317 express the manner in which the Fourth Amendment to the Constitution of the United States applies to trials by court-martial." Drafters' Analysis of Mil.R.Evid. 311, Manual for Courts–Martial, United States, 1984, at A22–16 (Change 2). Mil.R.Evid. 311 excludes evidence obtained by "an unlawful search ... made by a person acting in a governmental capacity." The Fourth Amendment and Mil. R.Evid. 311 are not violated when a military

member acts in a purely private capacity. *See United States v. Portt,* 21 MJ 333 (CMA 1986) (private search by airman assigned to clean guard-mount room); *United States v. Volante,* 4 USCMA 689, 16 CMR 263 (1954) (private search of Marine's locker by a sergeant).

■ 15. Interception of wire and oral communications is specifically covered by Mil.R.Evid. 317. This rule in (c) applies to interceptions "for law enforcement purposes." It does not mandate exclusion of evidence unless "such evidence must be excluded under the Fourth Amendment to the Constitution ... or if such evidence must be excluded under a statute applicable to members of the armed forces." *See* Drafters' Analysis of Mil.R.Evid. 317, Manual, *supra* at A22–29 (Change 2).

16. When CW3 Lang intercepted the conversations and when appellant was tried, the federal statute applicable to interception of wire and electronic communications specifically excluded cordless telephones from its coverage. *See* 18 USC § 2510(*l* ). Pub.L. No. 103–414, § 202(a)(1), 108 Stat. 4290–91, enacted on October 25, 1994, after this trial, amended the statute to cover cordless telephones. *See* 18 USC § 2515.

■ 17. Here the military judge found as fact that "CW3 Lang was not a law enforcement official and was not under color of law an enforcement official at any time that he made recordings of telephone conversations." ¶ 8. We hold that this finding of fact is supported by the record and not "clearly erroneous"; therefore, it will not be overturned on appeal. Because CW3 Lang was acting in his private capacity, the fruits of his actions are not subject to the exclusionary rule. ¶ 14. *See United States v. Baker,* 30 MJ 262, 266 (CMA 1990). This moots appellant's argument based on a reasonable expectation of privacy.

18. Appellant argues, however, that exclusion of the evidence is mandated by Article 31. We reject this argument for two reasons.

■ 19. First, the statute's plain language only applies to persons who "interro-gate, or request any statement." Art. 31(b). It does not apply to persons who simply listen.

■ 20. Second, Article 31 "requires warnings only when questioning is done during an official law enforcement investigation or disciplinary inquiry." *United States v. Loukas,* 29 MJ 385, 387 (CMA 1990). *See United States v. Bowerman,* 39 MJ 219 (CMA 1994) (questioning by military pediatrician for medical diagnosis). The military judge found that CW3 Lang was not engaged in law enforcement.

21. For these reasons, we hold that the military judge did not abuse his discretion by denying the motion to suppress the evidence obtained by CW3 Lang.

### Amendment of Specifications

22. Appellant contends that amending the specifications from alleging assimilated state offenses under clause 3 of Article 134 to alleging simple disorders under clauses 1 or 2 misled him, left him unprepared to defend against the new elements, and permitted the prosecution to introduce "objectionable testimony" about the victim's subjective impressions of appellant's conduct. He also asserts that the conduct alleged in the amended specifications does not constitute criminal conduct, or, in the alternative, that appellant was not on fair notice that his conduct was criminal. Final Brief at 23–25. The Government argues that the amendments were minor, that "no new elements were added," and that "the amended specifications fairly included everything" in the original specifications. Answer to Final Brief at 8–9.

23. RCM 603(c), Manual, *supra,* permits minor amendments of charges and specifications "at any time before findings are announced if no substantial right of the accused is prejudiced." RCM 603(a) provides: "Minor changes ... are any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." RCM 603(c) is based on Fed.R.Crim.P. 7(e).

Drafters' Analysis of RCM 603, Manual, *supra* at A21–30 (1994 ed.).

24. Fed.R.Crim.P. 7(e) codified the common law. *Fredrick v. United States,* 163 F.2d 536, 547 (9th Cir.), *cert. denied,* 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360 (1947). It specifically applies only to an information, not an indictment. It is consistent with military practice, in which the charging process is akin to filing an information.

25. In deciding whether amending an information is permissible, federal Courts of Appeals use a two-pronged test based upon a literal reading of the rule. They say that an amendment is permissible "if no additional or different offense is charged [first prong] and if substantial rights of the defendant are not prejudiced [second prong]." Fed.R.Crim.P. 7(e). *See Wright v. Lockhart,* 854 F.2d 309, 312 (8th Cir.1988), *cert. denied,* 490 U.S. 1071, 109 S.Ct. 2077, 104 L.Ed.2d 642 (1989); *Government of the Virgin Islands v. Bedford,* 671 F.2d 758, 765 (3d Cir. 1982); *Government of the Canal Zone v. Burjan,* 596 F.2d 690, 693 (5th Cir.1979); *United States v. Blanchard,* 495 F.2d 1329 (1st Cir.1974); *U.S.A.C. Transport, Inc. v. United States,* 203 F.2d 878, 880 (10th Cir. 1953), *cert. denied,* 345 U.S. 997, 73 S.Ct. 1139, 97 L.Ed. 1403 (1953); *Fredrick v. United States,* 163 F.2d at 547.

26. The first prong usually is satisfied if the charge is altered to allege a lesser-included offense. *See, e.g., Canal Zone v. Burjan,* 596 F.2d at 693. The Third Circuit has stated that the first prong may be met even if the new offense has some additional elements, where the language of the information contains all the elements of the new offense. *Virgin Islands v. Bedford,* 671 F.2d at 765. The Eighth Circuit has permitted a sentence-enhancing element to be added. *Wright v. Lockhart,* 854 F.2d at 311, 312 (status as habitual criminal added to information).

27. The second prong is satisfied if the amendment does not cause unfair surprise. The evil to be avoided is denying the defendant notice of the charge against him, thereby hindering his defense preparation.

*See Wright v. Lockhart* and *Virgin Islands v. Bedford,* both *supra; United States v. Blanchard,* 495 F.2d at 1333; *U.S.A.C. Transport Inc v. United States,* 203 F.2d at 880; *Fredrick v. United States,* 163 F.2d at 547.

28. Applying these principles to appellant's case, we hold that the military judge did not violate RCM 603(c) by permitting the Government to amend the specifications. The same acts were alleged. The amended specifications charged lesser-included offenses of the original charges. The additional element of conduct prejudicial to good order and discipline or of a service-discrediting nature is an implied element of every offense in the military justice system. *See United States v. Foster,* 40 MJ 140, 143 (CMA 1994), *citing United States v. Doss,* 15 MJ 409, 415 (CMA 1983) (Cook, J., concurring in the result). The military judge limited the punishment to the lesser of the two. Appellant did not claim surprise or request additional time to prepare or restructure his defense.

29. Appellant complains that the amended specification permitted the prosecution "to elicit the objectionable testimony from CW3 Lang and other alleged victim/witnesses on these new elements." However, he does not further identify such "objectionable testimony." Final Brief at 23.

30. Based on our examination of the record, we conclude that appellant's complaint about "objectionable testimony" is not supported by the record. In each instance of potentially "objectional testimony," either the defense objection was sustained, the defense limited their objections to weight rather than admissibility, or they affirmatively stated that they did not object.

31. The military judge sustained defense objections to trial counsel's attempt to elicit testimony from CW3 Lang regarding the effect of appellant's conduct on the unit as well as his personal opinion of the propriety of appellant's conduct. When trial counsel attempted to elicit testimony from Mrs. T, one of the women called by appellant, about the impact of appellant's conduct on her perception of the Army and the officer corps,

the military judge rephrased the question after defense objection. Defense counsel stated that he had no objection to the question as rephrased. When Mrs. T's husband and Mrs. B testified about their perception of the Army and its officer corps, defense counsel stated that his objection was only to the weight of the testimony, and in both cases the military judge announced that he would give the testimony "appropriate weight."

■ 32. Finally, we turn to appellant's claim that he was not on fair notice that the conduct alleged in the amended specification was criminal. In our view, any reasonable officer would know that asking strangers of the opposite sex intimate questions about their sexual activities, using a false name and a bogus publishing company as a cover, is service-discrediting conduct under Article 134. *See United States v. Hartwig*, 39 MJ 125, 130 (CMA 1994) ("[a]ny reasonable officer" would know "that sending sexual overtures to a stranger . . . risk[s] bringing disrepute upon . . . his profession"). Appellant's claim is without merit.

## Decision

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.