ERDMANN, Judge,
with whom STUCKY, Judge, joins (dissenting):
This case calls on us to review a military judge’s decision to suppress evidence, which the military judge held was seized in violation of the Fourth Amendment guarantee against unreasonable searches and seizures. Following a hearing on the motion to suppress, the military judge concluded: the government has not proven by a “preponderance of evidence that the items seized and ultimately searched (the Dell Laptop, the HP Laptop and the Centón thumb drive) were done so in accordance with the Fourth Amendment and the MREs.” As I view this case turning on the government’s initial burden of proof in responding to a motion to suppress and the standard of review we are required to apply to that decision, I respectfully dissent from the majority opinion.

Background

While visiting a friend’s house, Senior Airman Buford’s wife, AB, became distraught as she looked at a “fake” Facebook account that was associated' with her husband’s e-mail. Airman First Class RM, a member of Security Forces, was also visiting at the house and was asked by AB to take a look at the Facebook page because she knew he was a “cop.”
When RM began looking at the Facebook page his initial instinct was that it might contain evidence that Buford was cheating on his wife. He was aware at the time that adultery was a Uniform Code of Military Justice (UCMJ) offense and he agreed that his “cop” training kicked in and he began to gather evidence. RM looked at multiple conversations on the Facebook page. He then searched the messages folder of the *103 Facebook page and found pictures of male genitalia as well as sexually explicit communications. RM began to take screen shots because he “knew it could possible [sic] go some more places than just cheating. And just in case that Facebook account was deleted or something of the sort that we would have screenshots for proof.”
RM then asked AB to access the e-mail account used to create the Facebook page. AB signed into her husband’s e-mail account and RM specifically searched for messages with photo attachments. He found pictures of what appeared to be underage nude females. He took screenshots of the pictures because “there was something a lot more than cheating and that because of the appearance of the females looking under age [sic] that it should be taken to investigations.”
RM placed the screenshots on a USB flash drive and gave the flash drive to AB. RM then encouraged AB to take the evidence to Security Forces investigations and, when she agreed, he drove her there that night. ■ Security Forces then contacted the Air Force Office of Special Investigations (OSI).
The next day, RM drove AB to OSI where she signed a consent to search her Dell laptop, a flash drive, and 1 GB memory card. The OSI searched AB’s house later that day. During the search RM acted as a conduit between AB and the OSI. RM was told by the OSI to discontinue his involvement in the investigation. However, RM testified that at the same time he was also told “if I did find something or something was brought to my attention, to give them a call immediately and turn it into them and don’t do anything myself.”
Later, AB and a friend approached RM with a Centón flash drive they had found in the back of the TV entertainment center at the Buford’s residence. RM testified that he wasn’t sure whether it was AB or her friend who actually gave him the flash drive. RM opened the flash drive on his personal laptop because he wanted to ensure there was evidence on it. The drive contained pornography that RM believed included images of underage females. RM then called the OSI and after informing them of the flash drive, he was directed to turn the drive over to them, which he did the next day.

Standard of Review:

As the military judge correctly identified, when responding to a motion to suppress evidence, the government has the “burden of proving by a preponderance of the evidence that the evidence was not obtained as a result of an unlawful search or seizure.” Military Rule of Evidence 311(e)(1). We review that ruling for an abuse of discretion. United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F.1995). I agree with the majority that “[w]hen an appeal presents a mixed question of law and fact, as this one does, this Court will find that a military judge abused her discretion if her ‘findings of fact are clearly erroneous or [her] conclusions of law are incorrect.’” United States v. Buford, 74 M.J. 98, 100 (C.A.A.F.2015) (quoting United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F.1995)) (second set of brackets in original). “The abuse of discretion standard calls for more than a' mere difference of opinion. The challenged action must be arbitrary[,] clearly unreasonable, or clearly erroneous.” United States v. Wicks, 73 M.J. 93, 98 (C.A.A.F.2014) (citations omitted) (internal quotations omitted). As we are reviewing this matter in an interlocutory Article 62, UCMJ, 10 U.S.C. § 862 (2012), appeal, we view the evidence in the light most favorable to the prevailing party at trial. United States v. Baker, 70 M.J. 283, 287-88 (C.A.A.F.2011).

Discussion

I have no quarrel with the facts relied upon in the majority opinion. However those facts, while supporting the majority’s position, do not reflect the totality of the testimony heard by the military judge, much of which was conflicting. The military judge’s opinions reflect that she considered these conflicts and reached her factual find *104 ings after considering all of the evidence.[1] For instance,- the military judge found that:
Throughout the time [RM] acted, in his words, “as a conduit” between [AB] and OSI, although he stated he was not acting in an official capacity, his testimony leads the court to believe otherwise. He stated “[AB] asked him to look at the laptop because he was a cop; that he began searching for and collecting evidence; that he didn’t want evidence to get lost; that he was going off his instincts as a SFS member; that he searched the messages section because he knew that’s where people hide stuff; that once he saw the names associated with the pictures, he became more curious.” At no time up to this moment, had [RM], then an active duty SFS member, sought search authorization or even requested search authorization. He further relayed to the Court that “he encouraged [AB] to go to investigations and that he felt responsible until the laptop was turned over to SFOI and then OSI.”
Based on the foregoing, this Court finds that [RM], then an active duty Security Forces member with some, all be it not nearly as extensive as an OSI agent, training in conducting investigations, was acting as an agent for Government at the time he searched the Dell laptop and saved the evidence to a thumb drive. His actions went far and beyond those expected of a private citizen.
The military judge set forth her legal conclusion on this issue in her ruling on the government’s motion for reconsideration:
In U.S. [v.] Volante, [4 USCMA 689,] 16 C.M.R 263, 266 [(1954)], the Court of Military Review found in 1954 that: “Plainly, not every search made by persons in the military service is under the authority of the United States. However, we need not attempt to establish categories of persons or situations which will make the search either official or private. Certainly, a search by a person duly assigned to law enforcement duty and made for the sole purpose of enforcing military law, is conducted by a person acting under the authority of the United States.”
Emphasis in original.
Since Volante was decided, we have focused more on whether the government authorized or participated in the search, but we have not modified or overruled the holding in Volante. In United States v. Daniels, 60 M.J. 69, 71 (C.A.A.F.2004) we specifically examined the issue of private aetors/government agents in the context of Fourth Amendment searches:
Moreover, the question of whether a private actor performed as a government agent does not hinge on motivation, but rather “on the degree of the Government’s participation in the private party’s activities, a question that can only be resolved ‘in light of all the circumstances.’ ” Skinner v. Railway Labor Executives’ Ass’n, 489 U.S. 602, 614-15, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (internal citations omitted). To implicate the Fourth Amendment in this respect there must be “clear indices of the Government’s encouragement, endorsement, and participation” in the challenged search. Id. at 615-16, 109 S.Ct. 1402.
While the identity and motivation of the individual conducting the search is not determinative on its own as to the status of a private actor, it is a circumstance that must be considered “in light of all circumstances.”
In this case, it is clear that the government did not direct RM to conduct the initial searches. It is also clear that while the government told RM to stop his involvement in the investigation, at the same time the government told him: “if I did find something or something was brought to my attention, to give them a call immediately and turn it into them and don’t do anything myself.” RM was later given the Centón flash drive and after searching the drive for evidence, he contacted the OSI as he had been directed to do and turned the drive over to them.
The question then becomes whether this later involvement by the government, in combination with all other circumstances of the search, is sufficient to constitute a govern *105 ment search for Fourth Amendment purposes. This area was addressed in United States v. Knoll, 16 F.3d 1313, 1320 (2d Cir.1994):
The Supreme Court acknowledged in Lustig v. United States that “a search is a search by a federal official if he had a hand in it” and that “so long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it.” 338 U.S. 74, 78-79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949) (plurality opinion). Lustig makes clear that it is “immaterial” whether the government originated the idea for a search or joined it while it was in progress. Id. at 79, 69 S.Ct. [1372], The government may become a party to a search through nothing more than tacit approval. See 1 Wayne R. LaFave, Search & Seizure § 1.8(b), at 180 (2d ed. 1987).
See also United States v. Coronna, 420 F.2d 1091, 1093 (5th Cir.1970); United States v. Searp, 586 F.2d 1117, 1120 (6th Cir.1978); United States v. Payne, 429 F.2d 169, 170 (9th Cir.1970); United States v. Souza, 223 F.3d 1197, 1202 (10th Cir.2000); Skinner, 489 U.S. at 615, 109 S.Ct. 1402 (finding the “[government did more than adopt a passive position toward the underlying private conduct”).
The OSI told RM that if he received additional evidence, he should turn it over to them. He was not told that if anyone approached him with additional evidence he should direct that individual to the OSI. The OSI’s investigation in Buford’s activities was an ongoing effort when RM received the Centón flash drive and turned it over to them, as the drive was the basis for one of the charges against Buford. The purpose of the OSI’s seizure — to obtain incriminating evidence against Buford — had not yet been completely accomplished. Where the government had accepted the initial evidence seized by RM, their later direction to him to turn over any further evidence he might obtain, which he did, reflects sufficient government involvement to render the search a governmental search.
Given the initial burden of proof on the government, reviewing the evidence in the light most favorable to Buford, and applying our abuse of discretion standard to this mixed question of law and fact, I conclude that the military judge did not abuse her discretion in finding that RM was acting as a government agent. I would therefore affirm the military judge’s ruling to suppress the evidence.[2]
While in Article 62, UCMJ, appeals we review the military judge’s decision directly, one of the CCA’s holdings deserves comment. The military judge held that the Cen-tón flash drive should be suppressed as RM was acting as a government agent and the government had not otherwise established that it would be admissible. The CCA reversed this determination. The CCA found that the Centón flash drive was given to RM by AB and although the drive was used exclusively by Buford, it was not password protected and was found in a common area of the house. The CCA held that AB therefore had common control over the drive. However, the CCA’s factual finding that the flash drive was given to RM by AB is in conflict with a factual finding made by the military judge that it was impossible to determine whether the drive was given to RM by AB (who may have had common control) or by her friend (who had no claim to common control).
The CCA cannot make findings of fact in direct conflict with a factual finding of the *106 military judge without holding that the military judge’s finding was clearly erroneous. United States v. Czachorowski, 66 M.J. 432, 434 (C.A.A.F.2008) (“findings of fact are affirmed unless they are clearly erroneous”); United States v. Martin, 56 M.J. 97, 106 (C.A.A.F.2001) (“[FJindings of fact made by the trial judge shall not be set aside unless clearly erroneous.” (quoting Maine v. Taylor, 477 U.S. 131, 145, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)) (internal quotation marks omitted)). Here the military judge’s finding was fairly supported by the record. Given the government’s burden of proof, taking the evidence in the light most favorable to Buford, the military judge, did not abuse her discretion in suppressing the flash drive and the CCA’s factual findings and conclusion of law to the contrary was in error. See Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (“Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.”).

. The military judge issued a seven-page opinion on October 5, 2013, and a five-page opinion on October 7, 2013.

. While the military judge held that AB gave RM consent to search her Dell laptop when she first asked him to look at the computer, she also held that the consent did not extend to the Facebook profile or Buford's e-mail account. Although the military judge did not discuss the admissibility of evidence found on the Dell laptop hard drive, it appears she did not intend for that evidence to be suppressed. That is the same conclusion reached by the CCA:
We concur with the military judge's determination on the issue of consent. AB gave consent to the search of the Dell laptop and had both actual and apparent authority over that laptop. Nevertheless, we also agree that consent to the search of the Dell laptop did not extend to the Facebook and e-mail accounts of the appellee.
United States v. Buford, Misc. Dkt. No. 2013-26, slip op. at 6, 2014 WL 2039102 (A.F.Ct.Crim.App. Apr. 4, 2014).