**UNITED STATES, Plaintiff,**

v.

**Elijah MCINTOSH, Defendant.**

**No. CR.2002–118.**

District Court, Virgin Islands, Appellate Division.
D. St. Thomas and St. John.

Oct. 30, 2003.

Nelson L. Jones, Assistant United States Attorney, St. Thomas, VI, for Plaintiff.

Douglas J. Beevers, Assistant Federal Public Defender, St. Thomas, VI, for Defendant.

## MEMORANDUM OPINION

MOORE, District Judge.

Defendant has moved to suppress a gun that was seized on the early morning of April 25, 2002 during the J'ouvert festivities of St. Thomas's Carnival. After careful consideration of testimony provided at the evidentiary hearing, oral argument, and supplemental briefing by the parties, I find that the police officers had reasonable suspicion to stop and frisk the defendant as well as probable cause to arrest him. Accordingly, I will deny the motion to suppress.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2002, Virgin Islands Police Officer Kerry Harrigan ["Officer Harrigan"] and at least fifteen other officers were assigned to control the crowd of hundreds of exuberant J'ouvert partyers along the waterfront on St. Thomas. (Suppression Hearing Transcript ["Tr."] at 12.) J'ouvert, a part of the annual St. Thomas Carnival weekend, begins in the wee hours of the morning. It is a procession, locally called a "tramp", of hundreds of revelers drinking alcohol and dancing along the waterfront in Charlotte Amalie to music blasting from various local bands atop slowly moving flatbed trucks. At the time he encountered the defendant, Officer Harrigan and other officers were walking in front of the Jam Band truck and clearing the way so the tramp could keep moving. (Id.) Jam Band traditionally attracts the largest crowd and poses the greatest threat to safety. (Id. at 30.)

Officer Harrigan and other police officers earlier had broken up a fight and arrested some unruly J'ouvert participants. (Id. at 71–72.) About 8 a.m. the defendant, Elijah McIntosh ["McIntosh" or "defendant"], bumped his right hip and waist area into Harrigan's left hand, walked away, "grabbed his waist area and looked back at [the officer] a couple [of] times." (Id. at 12–13, 74.) Officer Harrigan recognized McIntosh from two separate incidents in which the defendant was in vehicles in which firearms had been found. (Id. at 14–15.) During these two

incidents, Harrigan learned that McIntosh: (1) had been working at a local hotel with his brother and father as an electrician and (2) that he had been "in the system of St. Croix, [and] had been arrested for various crimes," although Harrigan did not know whether McIntosh had ever been convicted. (*Id.* at 33, 56–57.) He also testified that he felt a hard object in the defendant's waist area. (*Id.* at 36.) Officer Harrigan suspected that McIntosh was carrying a firearm based on these earlier contacts with the defendant associated with guns, feeling the hard item on defendant's waist, and the nervous way the defendant acted after they bumped. (*Id.* at 31.) Harrigan told his partner, Officer Manuel Christian, that he believed McIntosh had a firearm on him and they approached the defendant as he stood by a curb nearby. (*Id.* at 14.) Officer Harrigan patted the defendant down for the officers' protection, placed his hand on the hard object that he thought was a gun, and discovered that it was indeed a firearm. (*Id.* at 13–14, 16, 46.) McIntosh was arrested for the territorial offense of unauthorized possession of a firearm (14 V.I.C. § 2253(a)), and on May 1, 2001, the defendant was charged with this same offense in Territorial Court. On June 27, 2002, the United States obtained an indictment in this Court charging McIntosh under federal law as a felon in possession of a firearm in Count One (18 U.S.C. §§ 922(g)(1) and 924(a)(2)), and recharging him with the Virgin Islands felony of unauthorized possession of a firearm in Count Two (14 V.I.C. § 2253(a)). I dismissed Count Two with prejudice for violation of the District Court of the Virgin Islands Speedy Trial Plan of 1974. *United States v. McIntosh,* 229 F.Supp.2d 431 (D.Virgin Islands 2002). Although the Virgin Islands gun possession violation is no longer pending in this case, it provided the basis for Officer Harrigan's lawful stop and frisk of the defendant and the probable cause for McIntosh's arrest on April 25, 2002.

## II. DISCUSSION

### A. The *Terry* Stop

■ A Virgin Islands police officer may, "consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). To make a showing of reasonable suspicion, an officer must be able to articulate more than an "inchoate and unparticularized suspicion or hunch" of criminal activity. *Terry,* 392 U.S. at 27, 88 S.Ct. 1868; *see Wardlow,* 528 U.S. at 124, 120 S.Ct. 673 (recognizing that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion). These requirements were clearly met here.

In the Virgin Islands, whoever possesses or carries any firearm, either openly or concealed, may be arrested without a warrant and punished by imprisonment of from six months to five years, unless he is authorized by law to carry the firearm. 14 V.I.C. § 2253(a).[1] The "unless otherwise authorized by law" element has been judicially construed to require that the government merely prove the absence of a license from the Commissioner of Police to carry

1. The full text reads:
Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than six months nor more than five years . . . .
14 V.I.C. § 2253(a).

or possess the gun. *United States v. McKie*, 112 F.3d 626, 630 (3d Cir.1997) (*quoting Government of Virgin Islands v. Soto*, 718 F.2d 72, 80 (3d Cir.1983)) ("[T]he gravamen of [§ 2253] appears to have been the possession of unlicensed firearms."); *Government of Virgin Islands v. Bedford*, 671 F.2d 758, 763 n. 7 (3d Cir.1982) (approving a jury instruction that § 2253(a) is violated if, "the defendant possessed the firearm; ... he was not licensed to possess it; and ... it meets the definition ... of a firearm."). Thus, any right of a J'ouvert celebrant to possess a gun in public is conditioned on the person being licensed by the Police Commissioner. *See* 23 V.I.C. § 454 ("A firearm *may* be lawfully had, possessed, borne, transported or carried in the Virgin Islands ... provided a license for such purpose has been issued by the Commissioner.") (emphasis added).[2]

McIntosh was moving in a crowd at J'ouvert when he brushed Officer Harrigan who personally felt an object that he thought was a gun in the defendant's waist. The officer recognized McIntosh from other incidents involving firearms. Harrigan observed McIntosh nervously look back and grab at his waist while he walked away. Officer Harrigan had participated with other police officers in breaking up a fight among other young revelers in the J'ouvert crowd earlier that morning. Finally, although more important in establishing probable cause for arrest once the gun was discovered, Officer Harrigan knew that McIntosh was unlikely to have a license because he only worked as an electrician and had been arrested for various crimes on St. Croix.[3] Harrigan thus had much more than an inchoate and unparticularized suspicion or hunch that the defendant was engaged in the criminal activity of unauthorized possession of a firearm.

Considering the totality of the circumstances surrounding his stop of McIntosh, I find that Officer Harrigan had a reasonable, articulable suspicion that criminal activity was afoot—that McIntosh possessed an unlicensed firearm secreted on his person. Having reasonable suspicion to approach and question the defendant, it was also proper for Officer Harrigan to frisk or pat McIntosh down in the reasonable belief he posed a threat to the police officers and the other J'ouvert celebrants.

### B. Probable cause to arrest

Probable cause to arrest has been defined as follows: "[W]hether at ... [the] moment [of arrest] the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (citations omitted); *see also United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir.1990). "While a 'bare suspicion' of criminal activity is not sufficient to estab-

---

**2.** The Court of Appeals ruled that the sections of Title 23 of the Virgin Islands Code which authorize the lawful possession of a firearm in the Virgin Islands, namely, sections 453 (Persons who may lawfully carry firearms) and 460 (Reciprocal recognition of out-of-state licenses) are exceptions to the "unless otherwise authorized by law" element of 14 V.I.C. § 2253(a). *McKie*, 112 F.3d at 631 n. 6, 36 V.I. at 374 n. 6 (3d Cir.1997) (Interpreting these words as requiring "the government to prove in each prosecution that none of the statutory exceptions to the firearm license requirement are satisfied ... would conflict with our obligation to construe statutes sensibly and avoid constructions which yield absurd or unjust results."). *Id.* at 631, at 374–75.

**3.** Officer Harrigan also knew that McIntosh's employment did not authorize him to carry a gun, although authorization by such employment would be an affirmative defense in court to a prosecution under 14 V.I.C. § 2253(a).

lish probable cause, neither are police required to have enough evidence to justify a conviction before they make a warrantless arrest." *See United States v. Morales*, 923 F.2d 621, 624 (8th Cir.1991) (citation omitted).[4]

■ Once the officers found the defendant to be in possession of a firearm during the course of their legal *Terry* stop and frisk of McIntosh, they had much more than a bare suspicion that he did not have a license for it. Officer Harrigan knew that McIntosh worked at a local hotel with his brother and father as an electrician, which was not the kind of job for which he could get a license to carry a gun.[5] He also knew that the defendant had been "in the system of St. Croix, had been arrested for various crimes," and is charged with knowing that the Commissioner is barred from giving a license to a person who is not of good moral character.[6] Based on this knowledge, together with Harrigan's personal observation of the defendant's nervous and evasive behavior and his earlier two contacts with the defendant involving a firearm, Officer Harrigan had more than reasonably trustworthy information that McIntosh was not licensed to carry the gun. I therefore further find that the police officers had probable cause to arrest McIntosh. A reasonably prudent person would have believed that Elijah McIntosh was in possession of a firearm without a license. I will, therefore, deny the defendant's motion to suppress.

### C. This case is not controlled by *United States v. Ubiles*

As already noted, a Virgin Islander who possesses or carries a firearm may be arrested without a warrant and punished by imprisonment of from six months to five years, unless he has obtained a license

---

4. Although the officers found out later that McIntosh was a convicted felon, Officer Harrigan did not rely on this fact to arrest the defendant that morning because he candidly admitted that he did not know that the defendant had any prior convictions. (*Id.* at 57.) Therefore, this Court does not and cannot consider his prior convictions as a factor in determining probable cause.

5. The following persons may be licensed to carry firearms:

A firearm may be lawfully had, possessed, borne, transported or carried in the Virgin Islands by the following persons, provided a license for such purpose has been issued by the Commissioner ...:

(1) An officer or employee of the Government of the Virgin Islands in cases where such license, in the judgment of the Commissioner, should be issued to such officer or employee by reason of the duties of his position;

(2) An agent, messenger or other employee of a common carrier, bank or business firm, whose duties require him to protect money, valuables or other property in the discharge of his duties; And provided, That the employer of such person shall have jus-

tified to the satisfaction of the Commissioner the need for the issuance of the license;

(3) A person having a bona fide residence or place of business within the Virgin Islands, who established to the satisfaction of the Commissioner that he has good reason to fear death or great injury to his person or property, or who establishes any other proper reason for carrying a firearm, and the circumstances of the case, established by affidavit of the applicant and of at least two credible persons, demonstrate the need for such license;

(4) A person licensed to and actively engaged in the business of manufacturing, repairing or dealing in firearms in the Virgin Islands, or the agents or representatives of any such person, having necessity to handle or use firearms in the usual or ordinary course of business;

(5) With respect to a rifle or a shotgun a person possessing a valid and current Virgin Islands hunting license.

23 V.I.C. § 454.

6. 23 V.I.C. § 456(a)(3) requires, *inter alia*, that the "Commissioner shall not issue a license ... [until] investigation establishes ... that the applicant is a person of good moral character ...."

from the Commissioner of Police to possess and carry the gun.

Under the Virgin Islands scheme for regulating the possession of firearms, a police officer is authorized to approach any person who, "in the light of his observations, information and experience," he reasonably believes may be carrying an unlicensed firearm and is or may be thus dangerous to the officer or to others, and it is both impracticable to obtain a search warrant and necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact carrying a firearm. 23 V.I.C. § 488.[7] The statutory scheme for controlling and regulating firearms in title 23 of the Virgin Islands Code makes it clear that the Legislature did not intend possession of a firearm in the Virgin Islands to be an unconditional right but rather a privilege to be granted in the Commissioner's discretion within that statutory framework. *But see United States v. Ubiles,* 224 F.3d 213, 217–18 (3d Cir.2000).

On the morning of April 30, 1998, at that year's J'ouvert parade, police officers, acting on a tip that Kahli Ubiles possessed a gun, stopped, frisked and arrested him for unauthorized possession of a firearm (14 V.I.C. § 2253(a)). The Court of Appeals ruled that the gun should have been suppressed because the tipster had said nothing indicating that Ubiles possessed the gun unlawfully, that he was about to commit a crime, or that he posed a threat to the officers or anyone in the crowd. *Ubiles,* 224 F.3d at 220. Inasmuch as the stop and frisk was ruled illegal, the Court of Appeals did not reach the question of probable cause to arrest. Fortunately, *Ubiles* is inapposite to the facts of this case.

The similarity of the facts of McIntosh and those of *Ubiles* begins and ends with the circumstance that both were standing

---

7. The police officer is authorized not only to approach the person but also to conduct a limited search:

(a) Any law enforcement officer who, in the light of his observations, information and experience, has a reasonable belief that (i) a person may be wearing, carrying, or transporting a firearm in violation of section 454 of this title, (ii) by virtue of his possession of a firearm, such person is or may be presently dangerous to the officer or to others, (iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a firearm, such officer may:

(1) approach the person and identify himself as a law enforcement officer;

(2) request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

(3) ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a firearm in violation of section 454 of this title; and

(4) if the person does not give an explanation which dispels, the reasonable belief which he had, he may conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a firearm. The police officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner and sex of the person approached.

(b) In the event that the officer discovers the person to be wearing, carrying, or transporting a firearm, he may demand that the person produce evidence that he is entitled to so wear, carry, or transport the firearm pursuant to section 454 of this title. If the person is unable to produce such evidence, the officer may then seize the firearm and arrest the person.

(c) Nothing in this section shall be construed to limit the right of any police officer to make any other type of search, seizure, and arrest which may be permitted by law.

. . . . .

23 V.I.C. § 488.

in a crowd on a J'ouvert morning while carrying a firearm. Unlike *Ubiles,* Officer Harrigan clearly had the "objective justification" for making the *Terry* stop. *See Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868 (applying an objective standard so that the facts available to the officer at the moment of the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate) (citation omitted). Officer Harrigan personally felt an object that he thought was a gun, rather than having to rely on an informant's tip. Harrigan recognized McIntosh from other incidents involving firearms. The officer personally observed McIntosh nervously look back while grabbing at his waist and quickly walking away. Officer Harrigan had participated with other police officers in breaking up fights and arresting other young revelers in the J'ouvert crowd earlier that morning. Finally, Harrigan knew that McIntosh was unlikely to have a license because he only worked as an electrician and had been arrested for various crimes on St. Croix. Officer Harrigan thus had a reasonable, articulable suspicion that McIntosh illegally possessed a firearm secreted on his person and that he posed a threat to the crowd and the other officers. *See United States v. Valentine,* 232 F.3d 350, 357 (3d Cir.2000) (distinguishing *Ubiles* and finding that circumstances including a concern for safety and defendant's evasive behavior support reasonable suspicion).

### III. CONCLUSION

Because Officer Harrigan had a reasonable suspicion that criminal activity was afoot, the *Terry* stop and frisk of the defendant was proper. Because a reasonably prudent person would have thought that the defendant was committing or had committed a crime, once the firearm was found hidden on his person, the officers also had probable cause to arrest McIntosh.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion of even date, it is hereby **ORDERED** that the defendant's motion to suppress is **DENIED.**