**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1247
_____

UNITED STATES OF AMERICA

v.

KENNETH McGAVITT,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-10-cr-00114-001)
District Judge:  Honorable Arthur J. Schwab
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 25, 2013

Before:  FUENTES, FISHER, and CHAGARES, *Circuit Judges*.

(Filed: July 24, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*

    Appellant Kenneth McGavitt challenges his conviction for two counts of mail fraud

in violation of 18 U.S.C. § 1341. McGavitt alleges the District Court abused its discretion

by denying his request for a trial continuance and by excluding evidence of a

Government witness's prior conviction. He further alleges the evidence presented at his

trial was insufficient to convict him. For the reasons stated below, we will affirm his conviction and sentence.

I.

Because we write for the parties, we discuss the facts only to the extent necessary for our resolution of the issues raised on appeal.[1]

McGavitt leased space in two properties he owned in Western Pennsylvania to VisionQuest, a company that provides intervention services for at-risk youth. Beginning in February 2002, VisionQuest leased property in Washington, Pennsylvania (the "Washington Property") for $10,000 a month through January 2005. Beginning in March 2004, VisionQuest leased property in Donegal, Pennsylvania (the "Donegal Property") for $20,000 a month for five years, and agreed to occupy only the fourth floor while subletting the bottom three back to McGavitt. Towards the end of 2004, VisionQuest began renegotiating both leases in order to reduce costs and avoid long-term obligations. The new lease for the Washington Property, signed in January 2005, reduced rent to $2,000 and allowed for termination with 90 days' notice. The new lease for the Donegal Property, signed in December 2004, kept rent at $20,000 but also allowed for termination with 90 days' notice.

In 2006, McGavitt sold the Washington Property to Bradley Reese. McGavitt induced Wesbanco to finance the sale by falsely representing that VisionQuest was still

---

[1] Evidence supporting the facts detailed below was presented at trial. Due to McGavitt's conviction, we review the evidence in the light most favorable to the Government. *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001).

paying $10,000 a month under the 2002 lease. McGavitt also failed to disclose that VisionQuest was nearly a year behind on its rent.

Later in 2006, McGavitt applied for a $3,000,000 loan from Business Loan Express Capital ("BLX") in order to pay down some debts (the "BLX loan"). McGavitt used the Donegal Property, and its revenue, as collateral. He falsely represented that VisionQuest was paying $24,000 a month under the 2004 lease with no early termination provision. Since the revenue stream was critical to the loan application, BLX informed McGavitt he would need to negotiate a ten-year lease with VisionQuest at a higher monthly rent payment.

McGavitt assured BLX that VisionQuest would rent the third and fourth floors of the Donegal Property for $29,000 a month. BLX approved the loan, provided that McGavitt submit documentation of the lease extension prior to closing. McGavitt created an amendment to the Donegal Property lease that showed a rent increase and ten-year extension. One of McGavitt's employees forged the signatures of VisionQuest's Director and CEO. McGavitt's employee also forged a document that would hold VisionQuest liable for the loan if McGavitt defaulted. McGavitt falsified notary stamps on the documents and then instructed another employee to fax the documents to his attorney from VisionQuest's fax machine, which they had access to at the shared Donegal Property. McGavitt's attorney FedExed the documents to BLX, and also FedExed a check, drawn from the loan proceeds, to one of McGavitt's creditors, a county tax authority.

3

VisionQuest terminated the Donegal Property lease in November 2006. Soon after, McGavitt defaulted on the BLX loan. When BLX approached VisionQuest to repay the loan, VisionQuest notified it that the signatures on the documents were forgeries.

On June 9, 2010, McGavitt was indicted on two counts of mail fraud in violation of 18 U.S.C. § 1341. One count was for the documents that McGavitt's attorney FedExed to BLX and the other was for the check from the BLX loan proceeds that McGavitt's attorney FedExed to the county tax authority. McGavitt was not charged with any fraud in connection with the Washington Property.

Prior to trial, McGavitt's counsel sought and obtained four continuances totaling 300 days for the filing of pretrial motions. He sought a fifth continuance due to personal matters as well as the "significant amount of documents" to be reviewed for trial, which the District Court denied. After a two-day trial, the jury found McGavitt guilty on both counts of the indictment. App. 28.

## II.

The District Court had jurisdiction under 28 U.S.C. § 3231. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review both the denial of a trial continuance and exclusion of evidence for abuse of discretion. *United States v. Irizarry*, 341 F.3d 273, 305 (3d Cir. 2003); *United States v. Johnson*, 388 F.3d 96, 100 (3d Cir. 2004). In evaluating the sufficiency of the evidence in support of a conviction "[w]e review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Wolfe*, 245 F.3d at 261.

4

A.

McGavitt argues that the District Court erred in denying his attorney's request for a trial continuance. District courts have "wide latitude" in exercising discretion to grant or deny continuances. *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986). In the exercise of discretion, courts should consider "the efficient administration of criminal justice; the accused's rights, including an adequate opportunity to prepare a defense; and the rights of other defendants awaiting trial who may be prejudiced by a continuance." *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991). The denial of a continuance will only be reversed if the denial is "so arbitrary as to violate [the accused's] due process [rights]." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

McGavitt was indicted on June 9, 2010. His attorney received four extensions, totaling 300 days, to file pretrial motions. The first three extensions were "to review materials" while the fourth was to "determine how to proceed." App. 22, 24, 26, 307. On May 18, 2011 the District Court set the case for trial beginning July 5, 2011. On June 3, 2011, McGavitt's attorney sought a trial continuance for the "significant amount of documents" to be reviewed. App. 28. The District Court denied the request based on the already significant delay of the case due to the four prior continuances. Ultimately, McGavitt's attorney acknowledged that he would "be ready to try" the case on whichever date he was called to do so.[2] App. 37.

---

[2] Indeed, this was not a complex case and the trial was just over two days from opening to verdict.

While McGavitt argues that more time would have put him in a *better* position to raise a defense, we review a district court's denial of a continuance for an arbitrary abuse of discretion that may impair the defendant's due process rights, not for whether the defendant may have been able to craft a better defense. "[T]he fact that something is arguable does not make it unconstitutional," and McGavitt has not shown that the District Court's denial of his continuance motion was so arbitrary as to constitute an abuse of discretion. *Ungar*, 376 U.S. at 591.

B.

McGavitt next argues that the District Court erred in excluding evidence of Government witness Bradley Reese's prior felony conviction for possession of child pornography. In evaluating whether evidence of a witness's criminal history should be admitted under Fed. R. Evid. ("Rule") 609, courts have considered "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the defendant." *Gov't of the V. I. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982). Rule 609 evidence may not be admitted if, under Rule 403, the trial court finds that "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *Bedford*, 671 F.2d at 761.

Reese's testimony involved McGavitt's false representations about the Washington Property and McGavitt's employees' access to VisionQuest fax machines. It was admitted to show McGavitt's motive to defraud BLX and to establish a pattern of conduct. The District Court, after hearing Reese's testimony, granted the Government's motion to exclude the conviction. The Court issued an opinion concluding that Reese's

6

conviction "has very little (if any) bearing upon [Reese]'s veracity or credibility. Further, its relative prejudicial value, especially given the nature of the criminal conduct, is great." Supp. App. 60 (citing *United States v. Ivins*, No. 09-320, 2010 WL 2635799 (E.D. Pa. June 28, 2010) (holding evidence of a child pornography conviction did not weigh heavily on the issue of veracity and was highly prejudicial)). Thus, the District Court's exclusion of this evidence was not an abuse of discretion.

## C.

McGavitt's final argument is that the evidence presented at trial was insufficient to convict him. We apply a deferential standard and must sustain a conviction when, viewing the evidence in the light most favorable to the Government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008) (citations omitted). Appellant "bears a very heavy burden" in raising an insufficiency of the evidence claim. *Id.*

McGavitt argues the evidence was insufficient to show he "knowingly participated in the preparation, execution and delivery of" the Fedexed documents. To prove mail fraud, the government must establish "(1) a scheme to defraud; (2) use of the mails to further the scheme; and (3) fraudulent intent." *United States v. Wright*, 665 F.3d 560, 572-73 (3d Cir. 2012) (internal citations omitted). McGavitt states there was no evidence that he prepared the fraudulent documents or mailed them, and argues this "evidentiary void" renders the evidence insufficient. Appellant Br. 54. However, "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business . . . then he 'causes' the mails to be used." *Pereira v. United States*, 347 U.S. 1, 8-9

(1954). There was sufficient evidence for the jury to find McGavitt caused the use of the mails, as his attorney was acting on his behalf when he mailed the documents and the check, and McGavitt could foresee this use of the mails. McGavitt has not overcome his heavy burden to show no rationale trier could have found him guilty.

III.

For the reasons stated above, we will affirm the District Court's Judgment of conviction and sentence.